25 P.3d 802

In the Matter of the WATER USE PERMIT APPLICATIONS, Petitions for Interim Instream Flow Standard Amendments, and Petitions for Water Reservations for the Waiāhole Ditch Combined Contested Case Hearing.

No. 21309.

Supreme Court of Hawai'i.

June 18, 2001.

See also 94 Hawai'i 97, 9 P.3d 409.

Paul H. Achitoff (David L. Henkin, D. Kapua'ala Sproat, of Earthjustice Legal Defense of Fund, Honolulu, and Alan T. Murakami and Carl C. Christensen of Native Hawaiian Legal Corporation; Honolulu, with

---

him on the motion), for petitioners/appellants.

James T. Paul (Pamela W. Bunn with him on the motion and reply), of Paul Johnson Park & Niles, Honolulu, for intervenor/appellant/cross-appellee.

Reid M. Yamashiro, Deputy Corporation Counsel, for appellants City and County of Honolulu Planning Department and Board of Water Supply.

Sonia Faust, Deputy Attorney General, for appellee Commission on Water Resource Management.

Paul M. Sullivan (Robert Klarquist, Willia B. Lazarus, Andrew C. Mergen and Cheryl L. Connett with him on the memoranda), for appellee Department of the Navy.

Gary M. Slovin (Margaret Jenkins Leong and Lisa A. Bail with him on the memorandum), of Goodsill Anderson Quinn & Stifel, Honolulu, for appellee/cross-appellant Dole Food Company, Inc./Castle & Cooke, Inc.

Michel A. Okazaki (Alan M. Oshima and Yvonne Y. Izu with him on the memorandum) of Oshima Chun Fong & Chung, Honolulu, for appellee/cross-appellant Estate of James Campbell.

Gilbert D. Butson of Reinwald O'Connor & Playdon, Honolulu, on the joinder, for appellee/cross-appellant Pu'u Makakilo, Inc.

James K. Mee of the Pacific Legal Foundation, Honolulu, for appellee Hawaii Farm Bureau Federation.

M. U'ilani Pau'ole (Benjamin A. Kudo, Wesley M. Fujimoto, Stacy E. Uehara and Naomi U. Kuwaye with her on the memoranda) of Imanaka Kudo & Fujimoto, Honolulu, for applicant/petitioner-appellant Kamehameha Schools Bishop Estate.

Kelly G. LaPorte (Gino L. Gabrio with him on the memorandum) of Cades Schutte Fleming & Wright, Honolulu, for appellee/cross-appellant Land Use Research Foundation of Hawai'i.

Jon T. Yamamura (Kevin E. Moore with him on the memorandum) of Carlsmith Ball, Hilo, for applicant-appellee Nihonkai Lease Co., Ltd.

Stephen K.C. Mau (Cheryl A. Nakamura with him on the memoranda) of Rush Moore Craven Sutton Morry & Beh, Honolulu, for appellee/cross-appellant Robinson Estate.

Ronald R. Sakamoto, Honolulu, for applicant-appellee Royal Oahu Resort Golf Course.

Presley W. Pang, (Diane Erickson with him on the memorandum), Deputy Attorneys General, for State of Hawai'i Agribusiness Development Corporation.

Haunani Burns, (Deborah Day Emerson and Marjorie A. Lau with her on the memorandum), Deputy Attorneys General, for State of Hawai'i Department of Agriculture.

Ray S.T. Enos, (Heidi M. Rian with him on the memorandum), Deputy Attorneys General, on the joinder, for State of Hawai'i Department of Land and Natural Resources.

MOON, C.J., LEVINSON, NAKAYAMA, and RAMIL, JJ., and Circuit Judge IBARRA, In Place of KLEIN, J., Recused.

## MOTIONS FOR ATTORNEYS' FEES

Opinion of the Court by NAKAYAMA, J.

On October 16, 2000, petitioners-appellants Waiāhole Waikāne Community Association, Hakipu'u 'Ohana, and Ka Lāhui Hawai'i (collectively, WWCA) and intervenor-appellant/cross-appellee Hawaii's Thousand Friends (HTF) filed motions for attorneys' fees in connection with the instant appeal; WWCA filed an amended motion on October 20, 2000. *See generally In re Water Use Applications, Petitions for Interim Instream Flow Standard Amendments, and Petitions for Water Reservations for the Waiāhole Ditch Combined Contested Case Hearing*, 94 Hawai'i 97, 9 P.3d 409 (2000) [hereinafter *Waiāhole Ditch I*]. Both parties (collectively, the Windward Parties) seek attorneys' fees under the "private attorney general" doctrine, an equitable rule heretofore never considered by this court. WWCA requests a total of $183,419.00 in fees taxed jointly and severally against "all appellees" in this case. HTF seeks a total of $18,513.40 in fees against "each of the parties participating in the appeal" except WWCA, apportioned in the court's discre-

tion. Numerous parties filed oppositions to the Windward Parties' motions: appellants City and County of Honolulu Planning Department and Board of Water Supply; appellee Commission on Water Resource Management (the Commission); appellee Department of the Navy; appellee/cross-appellant Dole Food Company Inc./Castle & Cooke, Inc.; appellee/cross-appellant Estate of James Campbell; appellee Hawaii Farm Bureau; applicant/petitioner-appellant Kamehameha Schools Bishop Estate; appellee/cross-appellant Land Use Research Foundation; applicant-appellee Nihonkai Lease Co., Ltd.; appellee/cross-appellant Robinson Estate; applicant-appellee Royal Oahu Resort; State of Hawaii Agribusiness Development Corporation; and appellee/cross-appellant State of Hawaii Department of Agriculture. Appellee/cross-appellant State of Hawaii Department of Land and Natural Resources joined in the memorandum submitted by State of Hawaii Department of Agriculture and Appellee/cross-appellant Pu'u Makakilo, Inc. joined in the memorandum submitted by the Estate of James Campbell.

In their submissions to the court, the parties advance various arguments for and against the adoption of the "private attorney general" doctrine. For the reasons stated below, we deny the Windward Parties' motions.

## I. DISCUSSION

■ "Normally, pursuant to the 'American Rule,' each party is responsible for paying his or her own litigation expenses. This general rule, however, is subject to a number of exceptions: attorney's fees are chargeable against the opposing party when so authorized by statute, rule of court, agreement, stipulation, or precedent." *Chun v. Board of Trustees of Employees' Retirement Sys.*, 92 Hawai'i 432, 439, 992 P.2d 127, 134 (2000).

■ This court has recognized a number of equitable exceptions to the "American Rule." Under the "bad-faith exception," for example, the court has the "inherent power to curb abuses and promote a fair process, including the power to impose sanctions in the form of attorneys' fees for abusive litiga-

tion practices." *Enos v. Pacific Transfer & Warehouse Inc.*, 79 Hawai'i 452, 458, 903 P.2d 1273, 1279 (1995) (citations and internal quotation marks omitted). *See also CARL Corp. v. Department of Educ.*, 85 Hawai'i 431, 460, 946 P.2d 1, 30 (1997) (creating a right to attorneys' fees where a bidder successfully challenges a contract awarded by a purchasing agency in bad faith). Another exception permits the award of attorneys' fees "where the wrongful act of the defendant has involved the plaintiff in litigation with others, or placed him [or her] in such relation with others as makes it necessary to incur expenses to protect his [or her] interest." *Uyemura v. Wick*, 57 Haw. 102, 108–09, 551 P.2d 171, 176 (1976). Under the "common fund" doctrine, plaintiffs who bring class-action litigation resulting in the creation of a common fund may be awarded attorneys' fees out of that fund. *See Chun*, 92 Hawai'i at 439, 992 P.2d at 134. This court has also acknowledged the related "common benefit" rule, under which the court may award attorneys' fees to plaintiffs who bring class-action litigation that produces a "common benefit," despite the absence of a true "common fund." *See id.* at 439 n. 7, 992 P.2d at 134 n. 7; *cf. Serrano v. Priest*, 20 Cal.3d 25, 141 Cal.Rptr. 315, 569 P.2d 1303, 1307–12 (1977) (treating the "common fund" and "common benefit" doctrines separately).

In this case, the Windward Parties ask this court to adopt and apply another exception to the "American Rule," one that this court has not previously addressed, the "private attorney general" doctrine. The doctrine is an equitable rule that allows courts in their discretion to award attorneys' fees to plaintiffs who have "vindicated important public rights." *Arnold v. Department of Health Servs.*, 160 Ariz. 593, 775 P.2d 521 (1989). Courts applying this doctrine consider three basic factors: "(1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, (3) the number of people standing to benefit from the decision." *Serrano*, 141 Cal.Rptr. 315, 569 P.2d at 1314.

The California Supreme Court summarized the arguments in favor of adopting the "private attorney general" doctrine as follows:

In the complex society in which we live it frequently occurs that citizens in great numbers and across a broad spectrum have interests in common. These, while of enormous significance to the society as a whole, do not involve the fortunes of a single individual to the extent necessary to encourage their private vindication in the courts. Although there are within the executive branch of the government offices and institutions (exemplified by the Attorney General) whose function it is to represent the general public in such matters and to ensure proper enforcement, for various reasons the burden of enforcement is not always adequately carried by those offices and institutions, rendering some sort of private action imperative. Because the issues involved in such litigation are often extremely complex and their presentation time-consuming and costly, the availability of representation of such public interests by private attorneys acting *pro bono publico* is limited. Only through the appearance of "public interest" law firms funded by public and foundation monies . . . has it been possible to secure representation on any large scale. [Certain] firms . . . , however, are not funded to the extent necessary for the representation of all such deserving interests, and as a result many worthy causes of this nature are without adequate representation under present circumstances. One solution, so the argument goes, within the equitable powers of the judiciary to provide, is the award of substantial attorneys fees to those public-interest litigants and their attorneys (whether private attorneys acting *pro bono* or members of "public interest" law firms) who are successful in such cases, to the end that support may be provided for the representation of interests of similar character in future litigation.

*Id.* 141 Cal.Rptr. 315, 569 P.2d at 1313–14. Simply stated, "the purpose of the doctrine is to promote vindication of important public rights." *Arnold,* 775 P.2d at 537. A number of courts have adopted and applied the "private attorney general" doctrine in awarding attorneys' fees to public-interest litigants. *See Serrano, supra* (upholding an award of $800,000 under the doctrine); *Arnold, supra; Hellar v. Cenarrusa,* 106 Idaho 571, 682 P.2d 524 (1984); *Watkins v. Labor & Indus. Review Comm'n,* 117 Wis.2d 753, 345 N.W.2d 482 (1984); *Montanans for the Responsible Use of the Sch. Trust v. State ex rel. Bd. of Land Comm'rs,* 296 Mont. 402, 989 P.2d 800 (1999); *Stewart v. Public Serv. Comm'n,* 885 P.2d 759 (Utah 1994); *Town of St. John v. State Bd. of Tax Comm'rs,* 730 N.E.2d 240 (Ind.Tax 2000); *see also Tanner v. Oregon Health Sciences Univ.,* 161 Or.App. 129, 980 P.2d 186, *review denied,* 329 Or. 527, 994 P.2d 129 (1999); *Brown v. State,* 565 So.2d 585 (Ala.1990).

Other courts have raised different arguments in rejecting the "private attorney general" doctrine. *See Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975); *Moore v. City of Pacific,* 534 S.W.2d 486 (Mo.Ct.App. 1976); *Hamer v. Kirk,* 64 Ill.2d 434, 1 Ill. Dec. 336, 356 N.E.2d 524 (1976); *Providence Journal Co. v. Mason,* 116 R.I. 614, 359 A.2d 682 (1976); *Van Emmerik v. Montana Dakota Utils. Co.,* 332 N.W.2d 279 (S.D.1983); *Blue Sky Advocates v. State,* 107 Wash.2d 112, 727 P.2d 644 (1986); *Jones v. Muir,* 511 Pa. 535, 515 A.2d 855 (1986); *Doe v. State,* 216 Conn. 85, 579 A.2d 37 (1990); *Nemeth v. Abonmarche Dev., Inc.,* 457 Mich. 16, 576 N.W.2d 641 (1998); *New Mexico Right to Choose/NARAL v. Johnson,* 127 N.M. 654, 986 P.2d 450 (1999). In *Alyeska Pipeline,* for example, the United States Supreme Court held that the federal courts could not award attorneys fees under the doctrine, emphasizing Congress's prerogative to specify statutory exceptions to the American rule and opining that courts

are not free to fashion drastic new rules with respect to the allowance of attorneys' fees to the prevailing party in federal litigation or to pick and choose among plaintiffs and the statutes under which they sue and to award fees in some cases but not in others, depending upon the courts' assessment of the public policies involved in particular cases.

421 U.S. at 269, 95 S.Ct. 1612. In *New Mexico Right to Choose,* the New Mexico Supreme Court further elaborated:

> [W]e are concerned that the adoption of the private attorney general doctrine ... would erode the policies underlying the American rule.... Unbridled judicial authority to "pick and choose" which plaintiffs and causes of action merit an award of attorney fees under the private attorney general doctrine would not promote equal access to the courts for the resolution of good faith disputes inasmuch as it lacks sufficient guidelines to prevent courts from treating similarly situated parties differently and· could easily result in decisions that favor a particular class of private litigants while unduly discouraging the government from mounting a good faith defense. Such authority also would not promote the goal of conserving judicial resources inasmuch as it calls for the courts to engage in a fact-specific reexamination of the merits of the case to determine the significance and scope of the rights that have been protected.

986 P.2d at 459.

Proponents of the doctrine, however, respond to these criticisms by observing that numerous exceptions have significantly eroded the American rule at common law. *See, e.g., Arnold,* 775 P.2d at 537. They also maintain that limiting the application of the doctrine to exceptional cases pursuant to the three-prong test articulated above provides effective constraints on judicial discretion. *See, e.g., Town of St. John,* 730 N.E.2d at 262–63. Some courts avoid the potential problem of encroaching on the legislature's domain by applying the doctrine only to litigation grounded in constitutional, rather than statutory, rights and duties. *See, e.g., Serrano,* 141 Cal.Rptr. 315, 569 P.2d at 1315.

■ Having reviewed the background of the private attorney general doctrine, and assuming *arguendo* that we were to embrace the doctrine as a general matter, we hold that the doctrine does not apply to the particular circumstances of the present case. This case appears to meet the first and third prongs of the doctrine's three-prong test. As this court recognized, this case involved constitutional rights of profound significance, and all of the citizens of the state, present and future, stood to benefit from the decision. *See Waiāhole Ditch I,* 94 Hawai'i at 198, 9 P.3d at 510 (recognizing the "ultimate importance of these matters to the present and future generations of our state"). The public rights at issue in this case compare favorably with those considered in other cases in which the courts awarded attorneys' fees under the private attorney general doctrine. *See, e.g., Arizona Ctr. For Law in Pub. Interest v. Hassell,* 172 Ariz. 356, 837 P.2d 158, 173 (Ariz.Ct.App.1991) (applying the doctrine in a case featuring issues related to the public trust doctrine); *Defenders of Wildlife v. Hull,* 199 Ariz. 411, 18 P.3d 722, 739 (Ariz.Ct.App.2001) (same); *cf. Montanans, supra* (applying the doctrine in a case involving the wrongful disposition of school trust lands).

Yet the applicability of the second prong of the test, "the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff," is less convincing. In other cases, the plaintiffs served as the sole representative of the vindicated public interest. The government either completely abandoned, or actively opposed, the plaintiff's cause. *See, e.g., Stewart,* 885 P.2d at 783 (observing that the agency charged with representing consumer interests made no appearance at all and that the government opposed the plaintiffs on all issues); *Serrano,* 141 Cal.Rptr. 315, 569 P.2d at 1315 n. 20 (noting that no governmental agency could reasonably have been expected to represent the rights asserted by plaintiffs); *Montanans,* 989 P.2d at 812 (noting the state's position that it was obligated to defend the disputed statutes). Here, the Windward Parties represented one of many competing public and private interests in an adversarial proceeding before the governmental body designated by constitution and statute as the primary representative of the people with respect to water resources, the Commission on Water Resources Management. *See Waiāhole Ditch I,* 94 Hawai'i at 143, 9 P.3d at 455. The Commission duly recognized its duties as trustee of state water resources, even to an extent further than

this court deemed appropriate. *See id.* at 142, 9 P.3d at 454. The Windward Parties contested various details in the Commission's execution of its public trust duties, and this court agreed that the Commission's decision needed "much more work." *Id.* at 198, 9 P.3d at 510. Nonetheless, the court made no rulings regarding the ultimate disposition of water resources, but simply remanded the matter to the commission for further findings and conclusions. *Id.*

The relevant point, of course, is not the extent of the Windward Parties' success on appeal, but, rather, the role played by the government. In sum, unlike other cases, in which the plaintiffs single-handedly challenged a previously established government law or policy, in this case, the Windward Parties challenged the decision of a tribunal in an adversarial proceeding not contesting any action or policy of the government. The Windward Parties cite no case in which attorneys' fees were awarded in an adversarial proceeding against a tribunal and the losing parties and in favor of the prevailing party, based on the reversal of the tribunal's decision on appeal. Nor does such a rule appear prudent from a policy standpoint, where public tribunals in adversarial settings must invariably consider and weigh various "public interests." Therefore, we hold that this case does not qualify for an award of attorneys' fees under the conventional application of the private attorney general doctrine.

## II. CONCLUSION

Accordingly, without deciding the merits of the "private attorney general" doctrine, or foreclosing its application in any future case, we hold that the doctrine does not apply here. The Windward Parties' motions are therefore denied.