310 P.3d 301

In the Matter of the Application of HONO-LULU CONSTRUCTION AND DRAY-ING COMPANY, LIMITED, to register and confirm title to land situate at Honolulu, City and County of Honolulu, State of Hawai'i, Aloha Tower Development Corporation, Respondent/Petitioner,

v.

STATE of Hawai'i, DEPARTMENT OF LAND AND NATURAL RESOURCES, Trustees of the William G. Irwin Charity Foundation, Scenic Hawai'i, Inc., The Outdoor Circle, Historic Hawai'i Foundation, Hawai'i's Thousand Friends, Life of the Land, William Olds, Jr. and Jane Olds Bogart, and Intervenor, City and County of Honolulu, Respondents/Respondents,

and

Scenic Hawai'i, Inc., Petitioner/Respondent–Cross–Appellee,

v.

Aloha Tower Development Corporation, Respondent/Petitioner–Cross–Appellant.

No. SCWC–30484.

Supreme Court of Hawai'i.

Aug. 9, 2013.

John T. Hoshibata, Rex Y. Fujichaku, and Dana A. Barbata, Honolulu, for petitioner.

Deirdre Marie–Iha, Honolulu, for respondent.

RECKTENWALD, C.J., NAKAYAMA, ACOBA, McKENNA, and POLLACK, JJ.

Opinion of the Court by ACOBA, J.

We hold that the Land Court (the court) [1] was right in awarding attorneys' fees and costs under the private attorney general doctrine, *see Sierra Club v. Dep't of Transp. of*

1. The Honorable Gary W.B. Chang presided.

*State of Hawai'i*, 120 Hawai'i 181, 218, 202 P.3d 1226, 1263 (2009) (*Sierra Club II* ), to Petitioner/Respondent–Cross–Appellee Scenic Hawai'i, Inc. (Scenic Hawai'i) [2], inasmuch as (1) the subject litigation vindicated the important public policy of preserving public parks and historic sites,(2) the early and prompt intervention of Scenic Hawai'i was necessary in light of the efforts by Aloha Tower Development Corporation (ATDC), Respondent/Petitioner–Cross–Appellant, represented by the Attorney General (AG), to rescind the park status of the park involved,[3] and (3) a significant number of people will benefit from the use of the park and its preservation as a historical site, and from the general precedential value of this case in enforcing the dedication of land for public parks and as historic sites.

Because the Intermediate Court of Appeals (ICA) held to the contrary, we vacate the January 18, 2013 judgment of the ICA filed pursuant to its December 19, 2012 Published Opinion [4], and affirm the March 29, 2010 Final Judgment of the court.

## I.

The private attorney general doctrine was first discussed by this court in *In re Water Use Permit Applications*, 96 Hawai'i 27, 25 P.3d 802 (2001) (*Waiahole II* ). "[N]ormally, pursuant to the 'American Rule,' each party is responsible for paying his or her own litigation expenses." *Sierra Club II*, 120 Hawai'i at 218, 202 P.3d at 1263 (quoting *Fought & Co. v. Steel Eng'g and Erection, Inc.*, 87 Hawai'i 37, 50–51, 951 P.2d 487, 500–01 (1998) (brackets omitted)). However, this court has recognized the private attorney general doctrine as an exception to this general rule. *See, e.g., Sierra Club II*, 120 Hawai'i at 181, 202 P.3d at 1226; *Maui Tomorrow v. Bd. of Land & Natural Res.*, 110 Hawai'i 234, 131 P.3d 517 (2006); *Waihole II*, 96 Hawai'i at 29, 25 P.3d at 804

(2001). The private attorney general doctrine sets forth an equitable rule enabling an award of attorneys' fees for vindication of important public rights. *Sierra Club II*, 120 Hawai'i at 218, 202 P.3d at 1263 ("within the equitable powers of the judiciary to provide, is the award of substantial attorneys fees to those public-interest litigants and their attorneys . . . .") (quoting *Serrano v. Priest*, 20 Cal.3d 25, 141 Cal.Rptr. 315, 569 P.2d 1303, 1313–14 (1977)).

> Courts applying the doctrine consider three basic factors: (1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, [and] (3) the number of people standing to benefit from the decision.

*Id.* (quoting *Maui Tomorrow*, 110 Hawai'i at 244, 131 P.3d at 527) (brackets omitted) (emphasis added).

## II.

### A.

In 1930, Helene Irwin Fagan (Fagan) dedicated Irwin Park [5] to the Territory of Hawai'i (Territory) in trust "to be used as a public park to beautify the entrance to Honolulu Harbor." The deed and trust agreement between Fagan and the Territory included four restrictive covenants (Restrictions and Conditions) that governed the use and maintenance of Irwin Park, including preserving and using Irwin Park as a public park. The pertinent Restrictions and Conditions are as follows:

> (1) [t]he [Territory] shall . . . within three (3) years from and after the date hereof have converted all of said land, into a public park to be designated as the "Irwin Memorial Park."

---

**2.** The name of the organization Scenic Hawai'i, Inc. is used in the Record on Appeal and briefs both with and without an 'okina.

**3.** Scenic Hawai'i also absorbed attorneys' fees of the allied nonprofit organizations who intervened.

**4.** The opinion was filed by Associate Judges Daniel R. Foley, Alexa D.M. Fujise, and Katherine G. Leonard.

**5.** Irwin Park is located in Honolulu, Oahu, mauka of the Aloha Tower Marketplace and is bounded by North Nimitz Highway, Fort Street, Bishop Street, and Aloha Tower Drive.

(2) The [Territory] shall, at all times hereafter, suitably maintain all of said real property as a public park under the jurisdiction and control of the . . . Harbor Commissioners, or their successors in office. . . .

. . . .

(4) In the event that . . . all of said land shall not be suitably maintained by the [Territory] at any time hereafter as a public park, or if said public park shall at any time cease to be designated as "Irwin Memorial Park[,]" or if at any time hereafter any portion of said land shall be abandoned as a public park, . . . thereupon forthwith all right, title[,] and interest of the [Territory], and its successors and thereof, shall forthwith terminate, and title to all of said real property hereby conveyed shall forthwith immediately and without further act of either party to this agreement, their successors or assigns, revert to [Fagan], and her heirs and assigns, in fee simple absolute.

(Emphasis added.)

On March 13, 1931, Territorial Governor Lawrence M. Judd issued Executive Order No. 473 (Executive Order) which set aside and converted the property into a public park and adopted the Restrictions and Conditions set forth in the deed of Fagan to the Territory. This Executive Order has been and remains in full force and effect since March 13, 1931.

Prior to 1951, the Territory, through its Department of Public Works (DPW), developed plans to improve, construct, and widen Nimitz Highway. The plans required encroachment upon a portion of Irwin Park that totaled 24,303 square feet. By a letter dated August 7, 1951, the Territory, through R.M. Belt, the then Superintendent of the DPW, wrote to Fagan to request her consent to the construction and waiver of all of the Restrictions and Conditions.

On January 25, 1952, Wilford D. Godbold (Godbold), a Special Deputy Attorney General with the DPW, wrote to Fagan regarding the Nimitz Highway Plan. Godbold's letter to Fagan stated, in relevant part:

In connection with the above referred matter [regarding construction of the Nimitz Highway] an opinion has been received from the Territorial Attorney General and an appraisal has been obtained from the Territorial Board of Appraisers whereby an exchange has been held proper in connection with [ ] Fagan's reversionary interest in the portion of Irwin Memorial Park. The Territorial land which can be exchanged for such interest is of course limited to the value of $5,000.00. Pursuant to your request, an appraisal is now being made of the Hana Airport land by the Territorial Board of Appraisers . . . .

. . . .

It is therefore requested that you confirm, on the enclosed copy of this letter, your previous statement that [ ] Fagan would waive all of the reversionary provisions contained in that deed dated November 7, 1930 and recorded in Registration Book 99, Page 229, in the Bureau of Conveyances at Honolulu. The necessary instruments to formalize this waiver and proposed exchange will be prepared as soon as possible. You will be informed immediately upon the receipt of the appraisal of the Maui land.

(Emphases added.) Fagan responded to Godbold's letter on January 31, 1952 by signing a copy of his letter with the following insertion over her signature:

Waiver is hereby made of any and all damages resulting from a breach of the conditions contained in that certain deed above referred to. It is hereby agreed that the restrictive conditions contained in such deed will be withdrawn and cancelled.

Nimitz Highway was constructed and the construction encroached upon Irwin Park. However, the proposed exchange of Hana land never occurred, and the agreement set forth by Fagan in the January 31, 1952 letter she wrote in response to Godbold's January 25, 1952 letter was never consummated. There was apparently no further communication or documentation regarding the proposed exchange.

Fagan died on May 30, 1966 in California. William L. Olds, Jr. (Olds) and Jane Olds Bogart (Bogart) are Fagan's grandchildren

and heirs. The William G. Irwin Charity Foundation (Foundation) is named in Fagan's will as the principal beneficiary of her residuary estate.

In 1981, the Hawai'i State Legislature enacted Hawai'i Revised Statutes (HRS) Chapter 206J. HRS § 206J–4 (Supp.2008)[6] established the ATDC. HRS § 206J–1 (2001), entitled "Findings and Purpose", setting forth the purpose of the chapter, states in relevant part that, "[t]he legislature finds that the area in downtown Honolulu on the waterfront, including ... Irwin Memorial Park ... is one of the most valuable properties in downtown Honolulu.... The legislature finds and determines that the purpose of this chapter is in the public interest and constitutes a valid public purpose."

Additionally, HRS § 206J–6 (2001), in part, codified Executive Order 472 by placing limitations on the ATDC with respect to Irwin Park. HRS § 206J–6(c) provides that "Irwin Memorial Park shall be retained as a public park subject to the reservations and conditions set forth in the deed of Helen Irwin Fagan to the Territory of Hawai'i." (Emphasis added.)

In October 1999, the Hawai'i Historic Places Review Board placed Irwin Park on the Hawai'i Register of Historic Places, which confirmed Irwin Park's status as a historic property pursuant to HRS § 6E and Hawai'i Administrative Rules Title 13, Chapter 198.

### B.

The proceedings underlying the instant request for attorneys' fees may be summarized briefly. On May 15, 2001, ATDC filed a Petition in the court to expunge the deed restriction on Irwin Park requiring that it be preserved as a public park (Petition). The Certificate of Service attached to the Petition states that it was served upon John W.K. Chang, the attorney for Party–in–Interest State of Hawai'i (the State), and "Jane Fagan Olds and William Olds, Trustees of the William G. Irwin Charity Foundation."

On May 15, 2001, ATDC filed an ex parte application for an Order to Show Cause (Order to Show Cause) giving the parties in interest, including the State and the Foundation notice of the Petition, and an Order to Show Cause was issued on the same date by the court. On June 8, 2001, Scenic Hawai'i and four other preservation organizations[7] moved the court for leave to intervene in the litigation in order to preserve Irwin Park as a public park. On the same date, Scenic Hawai'i filed an ex parte application to shorten time on its Motion to Intervene, stating that if the motion to shorten time was not granted, "the only parties who will be present in [c]ourt on [the date of the Order to Show Cause hearing] will be the State of Hawai'i and possibly the [ ] Foundation." On June 14, 2001, ATDC filed a Memorandum in Opposition to Scenic Hawai'i's Motion to Intervene. Also on June 14, 2001, the Foundation answered ATDC's May 15, 2001 Petition, stating, *inter alia*, that "the 'reservations and conditions' in the Fagan deed have never been waived, released or abandoned by the Grantor nor her successors and assigns."

On June 15, 2001, the City & County of Honolulu (City) moved to intervene. The City's Memorandum in Support of its Motion to Intervene stated, *inter alia*, that, "[o]nce the restrictive covenants are removed, it is the City's understanding that ATDC intends to replace [Irwin] Park and parking area with a multi-level parking structure." In support of its right to intervene, the City's memorandum further stated that "[i]t cannot be disputed that the City has an obligation,

6. HRS § 206J–4(a) states, in pertinent part:
   § 206J–4 Aloha Tower development corporation; established. (a) There is established the Aloha Tower development corporation, which shall be a public body corporate and politic, a public instrumentality, and an agency of the State. The development corporation shall be placed within the department of business, economic development, and tourism for administrative purposes, pursuant to section 26–35.

7. The Outdoor Circle, Historic Hawai'i Foundation, Hawai'i's Thousand Friends, and Life of the Land were referred to as "the Preservation Organizations" in the court proceedings. In the interest of simplicity, the organizations are referenced together as "Scenic Hawai'i" when discussing the proceedings below. The Preservation Organizations are Hawai'i non-profit corporations.

arguably a responsibility, to take actions which substantially advance legitimate public interests, including protecting and preserving open space and the health and welfare to the public that open spaces in urban areas afford." The City's memorandum also went on to argue that its intervention was proper because its interest was inadequately represented by the existing parties to the suit. On this point, the City alleged that "even if the heirs of [ ] Fagan were properly served, their interest may not be parallel with that of the City in preserving the Park," because, "[t]he heirs, who apparently live outside the State of Hawai'i, may instead prefer to reach a monetary settlement with ATDC to waive the restrictive covenants in the deed." The City also acknowledged that Scenic Hawai'i "at least to the extent of preserving [Irwin] Park, [has] similar interests as the City."

On June 18, 2001, the court granted Scenic Hawai'i's Motion to Intervene. On June 27, 2001, Bogart and Olds, as individuals, filed their Answer and Response to the Petition of May 15, 2001, asserting an interest in Irwin Park and in the restrictive covenant that ATDC sought to expunge. At a hearing on July 2, 2001, the City's Motion to Intervene was granted.

On April 2, 2002, the court, in response to a motion by ATDC, filed an Order to Show Cause ordering the State and DLNR to appear as parties in interest. On May 2, 2002, the State and DLNR filed a Response to the Order to Show Cause. The State and DLNR responded in support of ATDC's filing of the Petition.

In November and December 2002, a nonjury trial was held. At the close of trial on December 12, 2002, the court orally denied the petition, stating:

> Therefore for these and other good cause shown in the record the court concludes that the restrictive covenants and reversionary interests contained in the 1930 deed are still valid and in full force and effect. Since the covenants and reversionary interests are still in effect, there is an absence of good cause to grant the [P]etition. Therefore the [P]etition is denied.

Scenic Hawai'i [8] filed a Motion for Attorneys' Fees and Costs on August 28, 2008, "pursuant to Rules 7 and 54(d) of the Hawai'i Rules of Civil Procedure and the common law principles set forth in *Maui Tomorrow* [ ], 110 Hawai'i 234, 131 P.3d 517 (2006)." Olds and Bogart and the Foundation filed Motions for Joinder in Scenic Hawai'i's Motion for Attorneys' Fees and Costs. The Motion for Joinder filed by Olds and Bogart stated, in part, that

> [i]n seeking to undo a private contract with [ ] Fagan, [ATDC] actually violated the public trust that resulted therefrom, and undermined the State's own parens patriae obligations. [Olds and Bogart] could not stand idly by. For [Olds and Bogart], and their family [F]oundation [ ], the Petition was nothing less than an attempt to impair contractual obligations owing to the Irwin Family, as well as a violation of the public trust.[9]

ATDC filed a Motion in Opposition to both motions for attorneys' fees on October 31, 2008.

The court filed its "Findings of Fact, Conclusions of Law, and Order" on November 3, 2008.[10] In its Findings of Fact, the court stated that Fagan's January 31, 1952 re-

---

8. The Motion for Attorneys' Fees and Costs was filed by all the five "Preservation Organizations." However, in its Application for a Writ of Certiorari (Application) to this court, Scenic Hawai'i states that "Scenic Hawai'i alone, paid for all of the attorneys' fees and costs."

9. Olds and Bogart and the Foundation are not requesting attorneys' fees on appeal, instead, the issue on appeal deals exclusively with Scenic Hawai'i's request for attorneys' fees and costs.

10. The November 3, 2008 Findings of Fact, Conclusions of Law, and Order recognizes six re-

spondents to the Petition: (1) William L. Olds, Jr., Jane Olds Bogart, William L. Olds, III, George T. Cronin, and Anthony O. Zanze, as Trustees of the William G. Irwin Charity Foundation; (2) William L. Olds, Jr. and Jane Olds Bogart, individually, as natural heirs of Fagan and persons with an interest in effecting her registered restrictions and conditions; (3) Scenic Hawai'i, The Outdoor Circle, Historic Hawai'i Foundation, Hawai'i's Thousand Friends, and Life of the Land, as "Preservation Organizations"; (4) The City and County of Honolulu; (5) the State of Hawai'i; and (6) the Department of Land and Natural Resources.

sponse to Godbold's request to withdraw the Restrictions and Conditions did not constitute a waiver of those Restrictions and Conditions. Rather, the court determined, Fagan's response constituted "an agreement to agree (to exchange a waiver for Hana land), not the waiver itself." The court went on to state that, "[t]he agreement into which [ ] Fagan agreed to enter, set forth in the January 31, 1952 language inserted by [ ] Fagan in her response to attorney Godbold's January 25, 1952 letter, was never consummated." In its Conclusions of Law, the court held, *inter alia,* that the restrictive covenants were still in effect:

> 10. For the foregoing reasons, this [c]ourt finds and concludes that the Restrictions [and] Conditions contained in the Indenture from [ ] Fagan to the Territory of Hawai'i dated November 7, 1930 ... as well as in Executive Order No. 472 issued on March 13, 1931 ... are still valid and remain in full force and effect. The Territory did not acquire any interest in [ ] Fagan's reversionary interest in the Property.
>
> 11. ATDC is not entitled to any relief pursuant to its Petition filed herein. The subject deed restriction shall not be expunged from Land Court Certificate of Title No. 310,513. The Property is, and remains, subject to the restriction that it be used as a public park to beautify the entrance to Honolulu Harbor.

(Emphases added.) The court's Order denied the Petition with prejudice and stated that, "[t]o the extent that recovery of attorney's fees and costs may be awardable under law, [r]espondents may ... file a motion for attorney's fees and costs."

On November 5, 2008, Scenic Hawai'i filed a Reply Memorandum in Support of its Motion for Attorneys' Fees and Costs. At a hearing on November 10, 2008, the court requested supplemental briefing on the issue of attorneys' fees. On June 26, 2009, the court entered an Order Granting in Part and Denying in Part Scenic Hawai'i's Motion for Attorneys' Fees and Costs. The order stated, in part, that "Scenic Hawai'i has satisfied the three-prong test of the private attorney general doctrine" but that the request for

fees was "denied without prejudice" to Scenic Hawai'i presenting billing entries for fees, rather than "block billing." (Emphasis in original.)

Scenic Hawai'i filed its "Renewed Motion for Attorney's Fees" (Renewed Motion) on December 23, 2009. ATDC opposed Scenic Hawai'i's Renewed Motion. On February 24, 2010, the court granted Scenic Hawai'i's Renewed Motion in the amount of $130,674.09 for attorney's fees. On March 29, 2010, the court entered its Final Judgment in favor of Scenic Hawai'i in the total amount of $135,637.69, which represented attorneys' fees and costs.

### III.

ATDC appealed to the ICA on April 28, 2010 and Scenic Hawai'i cross-appealed on May 12, 2010. On appeal, the ICA recognized three factors that must be considered in deciding whether to apply the private attorney general doctrine: "(1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, [and] (3) the number of people standing to benefit from the decision." *Id.* at 73, 293 P.3d at 146 (emphasis in original) (citing *Sierra Club II,* 120 Hawai'i at 218, 202 P.3d at 1263).

In connection with the first prong, the ICA held that "[t]he public policy advocated by Scenic Hawai'i ... had no connection to or impact on the factual dispute regarding whether Fagan had waived the deed restrictions or gifted the reversionary interest," because the issues "concerned whether ATDC had demonstrated it was entitled to ... expunge the deed restrictions on the Property[.]" *Id.*

Regarding the second prong, the ICA held that "Scenic Hawai'i did not serve 'as the sole representative of the vindicated public interest.'" *Id.* at 75, 293 P.3d at 148 (quoting *Waiahole II,* 96 Hawai'i at 31, 25 P.3d at 806) (citations omitted). Thus, it was "unnecessary for Scenic Hawai'i to respond to ATDC's Petition," so the court "need not consider the magnitude of the burden resulting from Scenic Hawai'i's intervention[.]" *In*

*re Honolulu Const.*, 129 Hawai'i at 75, 293 P.3d at 148. Finally, the ICA held that there was "no need to address" the third prong because Scenic Hawai'i failed to satisfy the first or second prong. *Id.* The court's March 29, 2010 Final Judgment was reversed as to its award of attorneys' fees and costs, but was "affirmed in all other respects."[11] *Id.*

### IV.

In its Application, Scenic Hawai'i asks "[w]hether the [ICA] gravely erred in holding that the [ ] [c]ourt abused its discretion [in] awarding Scenic Hawai'i its attorneys' fees and costs under the Private Attorney General Doctrine [ ]."

### V.

■ Scenic Hawai'i's Application essentially argues that the court did not abuse its discretion in granting fees, because Scenic Hawai'i did in fact meet all three prongs of the private attorney general doctrine. ATDC's April 3, 2013 Response argues that the ICA correctly applied the three prongs of the private attorney general doctrine pursuant to Hawai'i precedent, and that the ICA properly reviewed the award of attorneys' fees in holding that the court had abused its discretion.

Scenic Hawai'i filed a Reply with this court on April 10, 2013, stating, *inter alia,* that "[t]he City [ ] rode the coattails of Scenic Hawai'i[,]" and that "[a]dditionally, even though [the court] ordered the State and the DLNR to appear, they took no active role." Thus, Scenic Hawai'i concludes, "the ICA mischaracteriz[ed] the 'vigorous' involvement of the other parties and the lack of any reason for Scenic Hawai'i to remain involved in the matter after [the other parties] joined."

### IV.

■ In its Opening Brief to the ICA, ATDC challenged the application of the "abuse of discretion" standard to trial court determinations involving the private attorney general doctrine and argued in favor of *de novo* review. In its Response filed with this court, ATDC briefly reiterates this argument.

■ *Sierra Club II* could be construed as applying a de novo standard of review as to whether the plaintiff satisfied the private attorney general doctrine, and an abuse of discretion standard as to the monetary amounts that were awarded. *See Sierra Club II,* 120 Hawai'i at 220–30, 202 P.3d at 1265–75. Traditionally, however, an award of attorneys' fees and costs is reviewed for abuse of discretion. An abuse of discretion occurs "where the trial court has clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." *Maui Tomorrow,* 110 Hawai'i at 242, 131 P.3d at 525 (citations and internal quotation marks omitted). Sierra Club II does also state that " '[t]he trial court's grant or denial of attorneys' fees and costs is reviewed under the abuse of discretion standard[,]' " *Sierra Club II,* 120 Hawai'i at 197, 202 P.3d at 1242 (original brackets omitted) (citations omitted) (quoting *Kamaka v. Goodsill Anderson Quinn & Stifel,* 117 Hawai'i 92, 105, 176 P.3d 91, 104 (2008)). We retain the abuse of discretion standard, noting however that we review de novo whether the trial court disregarded rules or principles of law that arise in deciding whether or not a party satisfies the three factors of the private attorney general doctrine.

### VII.

#### A.

■ As noted, the first criterion of the private attorney general doctrine is "the

---

**11.** The ICA also stated that (1) "[n]one of the parties challenged the [ ] [c]ourt's decision on the merits of ATDC's petition," (2) none of the parties "contend[ed] that the [ ] [c]ourt erred when it determined that Scenic Hawai'i had standing and would be permitted to intervene in this Land Court registration matter[,]" and (3) "none of the State parties argued that sovereign immunity bars an award of attorney's fees against a State agency herein (or attempted to distinguish this case from the statutory waiver of sovereign immunity that was held to apply in *Sierra Club II*)." *In re Honolulu Const.,* 129 Hawai'i at 75 n. 5, 293 P.3d at 148 n. 5. "Therefore," the ICA noted, "we do not address these issues and this opinion should be construed accordingly." *Id.* We agree that sovereign immunity was not raised and therefore is not involved in this case.

strength or societal importance of the public policy vindicated by the litigation[.]" *Sierra Club II*, 120 Hawai'i at 218, 202 P.3d at 1263 (citations omitted). Inasmuch as the court's ruling was integral to the future use of Irwin Park as a public park and historic site and ATDC's statutory grant of authority pursuant to Chapter § 206J, Scenic Hawai'i's intervention in the underlying action satisfies the first prong of the private attorney general doctrine.

In the instant case, the issues that arise with respect to the first prong appear to be twofold. Initially, there is a question of the "strength or societal importance of the public policy" advocated by Scenic Hawai'i. *Sierra Club II*, 120 Hawai'i at 218, 202 P.3d at 1263 (citations omitted). In its Application, Scenic Hawai'i characterizes the public policy it vindicated as both "preserving Irwin Park for all residents and visitors" and "holding ATDC and the State to its statutory duty to preserve [Irwin] Park for the public good," specifically, the State's statutory duty to "retain the park 'as a public park to beautify the entrance to Honolulu Harbor.'"

In *Waiahole II*, this court held that the first prong of the doctrine was satisfied because the case "involved constitutional rights of profound significance." 96 Hawai'i at 31, 25 P.3d at 806. In that case, the underlying action, *In re Water Use Permit Applications*, 94 Hawai'i 97, 9 P.3d 409 (2000) (*Waiahole I*), had established, inter alia, that in light of the mandate of Article XI, sections 1 and 7 of the Hawai'i Constitution, the State Water Code did not supplant or override the public trust doctrine in Hawai'i, and that ground water was included as part of the water resources trust. *Id.* at 131–35, 9 P.3d at 443–449.

This court's opinion in Waiahole II also quoted a long passage from the California Supreme Court's decision in Serrano, setting forth the policies underlying the doctrine. *Waiahole II*, 96 Hawai'i at 30, 25 P.3d at 805. It stated that the goal of the doctrine is to award attorneys' fees to "deserving interests" "'to the end that support may be provided for the representation of interests of similar character in future litigation.'" *Id.* (quoting *Serrano*, 141 Cal.Rptr. 315, 569 P.2d

at 1313–14). This court applied the doctrine in *Sierra Club II*, and concluded that the plaintiff had vindicated an important public policy where it "establish[ed] the principle of procedural standing in environmental law in Hawai'i and clarif[ied] the importance of addressing the secondary impacts of a project in the environmental review process pursuant to HRS Chapter 343." 120 Hawai'i at 220, 202 P.3d at 1265.

Simply because this case relates to a discrete piece of property does not mean that Scenic Hawai'i has not advocated an important public policy. The preservation of public parks and historic sites in the State represents a significant public concern. *See* HRS § 6E–1 (2009) ("The Constitution of the State of Hawai'i recognizes the value of conserving and developing the historic and cultural property within the state for the public good."); HRS § 184–2(3) (2011) (providing for new parks and parkways to be established). Thus, Scenic Hawai'i's vindication of this public policy with respect to one particular public park and historic site, in this case, Irwin Park, would satisfy the first prong of the doctrine. Furthermore, the award of fees for the preservation of this particular park and historic site would further an ultimate goal of the private attorney general doctrine, as articulated in *Waiahole II*, "that support may be provided for the representation of interests of similar character in future litigation.'" 96 Hawai'i at 30, 25 P.3d at 805 (quoting *Serrano*, 141 Cal.Rptr. 315, 569 P.2d at 1313–14).

The second issue with respect to this prong, however, is the question of whether Scenic Hawai'i in fact "vindicated" this important public policy through the underlying litigation. It was on this issue that the ICA made its determination that Scenic Hawai'i did not satisfy the first factor, holding, as noted, that the public policy advocated by Scenic Hawai'i had no connection to the factual dispute at issue in the underlying case. *In re Honolulu Const.*, 129 Hawai'i at 74, 293 P.3d at 147. The ICA further held that "the [ ] [c]ourt's ruling on the Petition was only tangential to the ultimate disposition and future use of Irwin Park and did not include any determination as to whether ATDC's

intended use was a violation of HRS § 206J–6 or in contravention of Hawai'i Historic Preservation Law, HRS Chapter 6E." *Id.* at 74–75, 293 P.3d at 147–48.

Respectfully, this interpretation of the first prong of the doctrine is too restrictive. Considering "the strength or societal importance of the public policy vindicated by the litigation," *Sierra Club II,* 120 Hawai'i at 218, 202 P.3d at 1263 (citations omitted), requires that the litigation have vindicated a public policy, but does not require that the public policy be the subject of the litigation itself. Instead, an organization may seek to vindicate public policy through litigation on discrete issues, so long as the resolution of the litigation in favor of the organization vindicates a public policy goal, and that policy satisfies the first prong of the test. Black's Law Dictionary defines "vindicate," in relevant part, as "[t]o assert, maintain, or affirm (one's interest) by action[,]" as well as "[t]o defend (one's interest) against interference or encroachment[ ]." *Black's Law Dictionary* 1705 (9th ed. 2009). It is clear that, in intervening in the underlying action in the instant case, Scenic Hawai'i was "assert[ing], maintain[ing], or affirm[ing]" the important public policy goal of preserving public parks and historic sites. *Id.*

ATDC argues that public policy goals were not vindicated by the litigation because they were not the subject of the litigation. Under the facts of this case, it can hardly be said that "[a] public interest in preserving open spaces had nothing to do with the factual question of whether Mrs. Fagan had waived the deed restriction." Instead, as Scenic Hawai'i urges, "the Petition ... directly and necessarily implicated the public policy issue of the preservation of Irwin Park." There was no other purpose to ATDC's Petition than to expunge the deed restriction requiring that the land be designated as a public park.

At the heart of the Petition was ATDC's attempt to abrogate the deed provision that required the Irwin Park property to remain a park. The effect of the expungement sought by ATDC would be to repeal the mandate in HRS § 206J–6(c) and to nullify the property's placement on the list of histor-

ic places. Therefore, to deny Scenic Hawai'i fees would be an overly-formalistic application of what it means to vindicate an important public policy. Scenic Hawai'i has thus satisfied the first criterion of the doctrine.

### B.

#### 1.

■ The second criterion of the doctrine considers "the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff[.]" *Sierra Club II,* 120 Hawai'i at 218, 202 P.3d at 1263. In explaining Hawai'i's adoption of the doctrine, *Waiahole II* stated that:

"In the complex society in which we live it frequently occurs that citizens in great numbers and across a broad spectrum have interests in common. These, while of enormous significance to the society as a whole, do not involve the fortunes of a single individual to the extent necessary to encourage their private vindication in the courts."

96 Hawai'i at 30, 25 P.3d at 802 (quoting *Serrano,* 141 Cal.Rptr. 315, 569 P.2d at 1313). In *Waiahole I,* the plaintiffs contested a decision by the Commission on Water Resource Management in which it apportioned water rights "for various agricultural, leeward offstream, and nonagricultural uses, established a non-permitted ground water buffer, and denied various water use permits." *Maui Tomorrow,* 110 Hawai'i at 244, 131 P.3d at 527 (citing *Waiahole I,* 94 Hawai'i at 116–17, 9 P.3d at 428–29).

In *Waiahole II,* this court held that the action brought by plaintiffs in *Waiahole I* did not satisfy the second prong of the private attorney general doctrine because the plaintiffs did not "single-handedly challenge[ ] a previously established government law or policy," but, rather, "challenged the decision of a tribunal in an adversarial proceeding not contesting any action or policy of the government." *Waiahole II,* 96 Hawai'i at 31–32, 25 P.3d at 806–07. The plaintiff "represented one of many competing public and private interests in an adversarial proceeding," and thus was not the sole representative chal-

lenging an established governmental policy. *Id.*

In *Maui Tomorrow*, this court similarly held that the plaintiff's action could not satisfy the second prong of the doctrine. There, this court noted that the State had not abandoned or actively opposed the plaintiff's cause, but rather, that the Board of Land and Natural Resources "was under the impression, although erroneous, that the duty was to be carried out by another agency." 110 Hawai'i at 245, 131 P.3d at 528. Thus, in *Maui Tomorrow*, the agency did not abrogate its duty, but rather disagreed with the plaintiffs about which agency was required to satisfy that duty. *Id.*

In *Sierra Club II*, on the other hand, this court held that the plaintiff did satisfy this prong of the doctrine because it was necessary for the plaintiff to bring the action to enforce the duties owed by Department of Transportation (DOT) to the public under the Hawai'i Constitution. 120 Hawai'i at 220, 202 P.3d at 1265. Further, it held that Sierra Club and the other plaintiffs were "solely responsible for challenging the DOT's erroneous application of its responsibilities under HRS chapter 343." *Id.* This court distinguished the facts from *Waiahole II* and *Maui Tomorrow* by noting that in the underlying case, the DOT had not recognized its duty, and instead "wholly abandoned" that duty. *Id.* at 221, 202 P.3d at 1266.

The ICA held, as discussed, that Scenic Hawai'i could not satisfy this prong for two reasons. First, it held that there were "actual respondents [Olds, Bogart and the Foundation] who vigorously litigated their private interests." *In re Honolulu Const.*, 129 Hawai'i at 75, 293 P.3d at 148. Second, it held that, "even if we assume that the public's interests were at issue in this case and the State did not represent the general public's interest in maintaining Irwin Park in its current form, it appears that the City's intervention eliminated any need for 'private enforcement.'" *Id.* (emphasis added).

■■■ The private attorney general doctrine is an equitable rule. *Sierra Club II*, 120 Hawai'i at 218, 202 P.3d at 1263. As such, the court may grant attorneys' fees where equitable so long as the party requesting such fees satisfies the three prongs of the doctrine. It is not axiomatic that if a private party is named as a respondent or defendant in a particular litigation, an organization representing the public interest in the same litigation can never recover attorneys' fees pursuant to the private attorney general doctrine. Rather, a party representing the public interest along with other parties may still be "solely responsible" for advocating the public interest, *see Sierra Club II*, 120 Hawai'i at 220, 202 P.3d at 1265, despite the fact that private parties are named in the litigation.

2.

In the instant case, Scenic Hawai'i alleges that at the time it intervened in the litigation, it was not evident that any other private or public entities would be advocating for the public interest. When Scenic Hawai'i moved to intervene, it was not clear if the private entities were in fact "vind[icating]" the public interest in the courts. 96 Hawai'i at 31–32, 25 P.3d at 806–07. As part of its Supplemental Briefing in Support of Motion for Attorneys' Fees and Costs, filed on January 20, 2009, Scenic Hawai'i attached Declarations of Olds and Bogart. Bogart's Declaration stated that, "[u]ltimately we did not approve of the State of Hawai'i's plans for Irwin Park, and we sided with Scenic Hawai'i in an effort to preserve Irwin Park as a park for the citizens of Honolulu." (Emphasis added.) It further stated that, "[b]ut for the efforts of Scenic Hawai'i and the other Preservation Organizations, we would not have been made aware of the significance of Irwin Park and its importance to the residents of Honolulu." (Emphasis added.) Olds' Declaration contained similar statements. The Declarations of Olds and Bogart state that each of them were also authorized to speak on behalf of the Foundation.

Moreover, at the time of Scenic Hawai'i's intervention in the suit, the government entity, ATDC, actively opposed Scenic Hawai'i's cause through its Petition. This is distinguishable from *Maui Tomorrow*, where, as noted, this court denied attorneys' fees in part on the premise that the Board of Land

and Natural Resources had not wholly abandoned or actively opposed the plaintiff's cause. *See* 110 Hawai'i at 245, 131 P.3d at 528. As related, the State and DLNR responded to the court's Order to Show Cause by indicating their support of ATDC's filing of the Petition. Thus, the State and DLNR also opposed Scenic Hawai'i's cause once they joined in the litigation. The City had intervened in the suit as well and joined in the Motions to dismiss filed by Scenic Hawai'i and the Foundation's Motions to Dismiss the Petition to Expunge the Deed Restriction. But Scenic Hawai'i maintains that the City, to some extent, rode the coattails of Scenic Hawai'i after the City's intervention in the suit.[12]

At its hearing on March 27, 2009, the court heard arguments as to whether Scenic Hawai'i could satisfy the second prong of the doctrine. The court, taking into consideration the Olds and Bogart declarations, stated that it was inclined to award Scenic Hawai'i fees and costs from the beginning of its involvement in the suit until its "active participation was not necessary." At the time, the court deemed this to be "when respondents Olds and Bogart filed their answer contesting the [P]etition." As to Scenic Hawai'i's participation after the involvement of Olds and Bogart, the court stated that "[i]n light of such protection for the public interest, there was no necessity for [Scenic Hawai'i] to participate fully and actively in the opposition to the petition beyond a modicum of monitoring." Later, however, the court reconsidered this position, and concluded that Scenic Hawai'i was entitled to an award of all its "reasonable attorney's fees and costs."

There was a sound basis for the court's award of attorneys' fees and costs for Scenic Hawai'i's participation in the suit. Here, according to the signed declarations of Olds and Bogart, "[b]ut for the efforts of Scenic Hawai'i," the private parties "may not have thus participated in this litigation." This does not imply that organizations or parties representing the public interest may always recover attorneys' fees if they become involved in a lawsuit prior to the active involvement of any other parties, thereby creating a race to intervene.

But here, according to the signed declarations of Olds and Bogart, it was Scenic Hawai'i that made them aware of the significance of Irwin Park. Scenic Hawai'i moved swiftly to intervene before Olds and Bogart answered the Petition. There was only a brief time between when the ATDC filed its Petition on May 15, 2001, and the date of the Order to Show Cause hearing, on June 18th, 2001, as noted by Scenic Hawai'i. Accordingly, had Scenic Hawai'i not moved to intervene, ATDC might very well have prevailed in the face of a lack of opposition, abrogating not only the legislative mandate that Irwin Park remain a park, *see* HRS § 206J–6(c), but also demolishing the park as a historic site. Under these circumstances, Scenic Hawai'i is entitled to attorneys' fees as awarded by the court, pursuant to the private attorney general doctrine.[13]

## C.

As to the third criterion, "the number of people standing to benefit from the decision," *Sierra Club II*, 120 Hawai'i at 218, 202 P.3d at 1263 (citations omitted), this court has concluded that prong is satisfied where the plaintiffs had vindicated procedural rights related to environmental review. *See Sierra Club v. Dept. of Transp.*, 115 Hawai'i 299, 304, 167 P.3d 292, 297 (2007) (*Sierra Club I* ). In *Waiahole II*, this court recognized that the third prong of the doctrine is met where "all citizens of the state,

---

12. After *Serrano,* California courts have held that California's statute setting out three factors analogous to our private attorney general doctrine, "does not proscribe payment of attorneys fees to private plaintiffs who successfully initiate and try a private lawsuit for the public benefit solely because the [government has] initiated a similar action which is consolidated for trial with that brought by such plaintiff." *Comm. to Defend Reproductive Rights v. A Free Pregnancy Center,*

229 Cal.App.3d 633, 280 Cal.Rptr. 329, 336 (1991) (emphasis added); *see In re State Water Resources Control Bd. Cases,* 161 Cal.App.4th 304, 73 Cal.Rptr.3d 842, 849 (2008).

13. We observe that ATDC did not challenge the amount of fees granted by the court or contend that Scenic Hawai'i's fees should be apportioned between fees incurred before Olds and Bogart filed their Answer and fees incurred thereafter.

present and future, stood to benefit from the decision." 96 Hawai'i at 31, 25 P.3d at 806 (citing *Waiahole I*, 94 Hawai'i at 198, 9 P.3d at 510 (recognizing the "ultimate importance of these matters to the present and future generations of our state")).

To reiterate, in *Sierra Club II*, this court held that the underlying case provided a public benefit, because "it [was] generally applicable law that established procedural standing in environmental law and clarified the need to address secondary impacts in environmental review pursuant to HRS chapter 343 and [would] benefit large numbers of people over long periods of time." 120 Hawai'i at 221, 202 P.3d at 1266. This court further pointed to the opinion in the underlying case, which stated explicitly that, " '[a]ll parties involved and society as a whole would have benefitted had the public been allowed to participate in the review process of the Superferry project, as was envisioned by the legislature when it enacted the Hawai'i Environmental Policy Act.' " *Id.* (quoting *Sierra Club I*, 115 Hawai'i at 304, 167 P.3d at 297).

Our case law on the private attorney general doctrine has not yet addressed a situation where the public policy involves a discrete property or historic site open to the general public. In this case, benefits would clearly accrue to residents and tourists who visit the Aloha Tower area through the continued preservation of Irwin Park. The court's Conclusions of Law in the underlying litigation support this view, stating that "[t]he Property is, and remains, subject to the restriction that it be used as a public park to beautify the entrance to Honolulu Harbor."

Scenic Hawai'i cites to *Bitterroot River Protective Ass'n v. Bitterroot Conservation District*, 359 Mont. 393, 251 P.3d 131 (2011), a Montana Supreme Court case in support of its argument as to the third prong. In *Bitterroot*, the Montana court considered the same three factors in determining whether a group seeking declaration that a particular waterway was subject to the state's Natural Streambed and Land Preservation Act and Stream Access Law was entitled to attorneys' fees. 251 P.3d at 140. *Bitterroot* affirmed the district court's determination that

the decision clarified not only the status of the waterway at issue in the underlying litigation, but also the status of other public waters in the state, and therefore the third prong was satisfied. *Id.*

As in the instant case, *Bitterroot* involved a discrete determination, rather than a direct challenge to a law or policy. *See id.* The Montana court reiterated the district court's statement that the case was of "statewide importance to all Montanans," because "the decision clarified the status of other public waters in the state apart from the [public water at issue]." *Id.* Thus, inasmuch as the determination regarding one waterway had an impact on other waterways in the state, the Montana supreme court held that the third prong had been satisfied.

Scenic Hawai'i points to the precedential value of the litigation in this case in establishing that "the State and its agencies must abide by its obligations and statutory requirements...." HRS § 206J–6 does prescribe statutory limitations on the powers of ATDC with respect to Irwin Park, which ATDC presumably attempted to bypass through its Petition. *See* HRS § 206J–6(c). As noted, by way of its Petition, ATDC sought to remove the reservations and conditions explicitly referenced in the statute. This litigation concerned a specific property, but the result vindicated the dedication of public parks and historic sites across the state. The continued applicability of the reservations and conditions from the Fagan Deed in the use of Irwin Park helps to ensure the viability of statutory controls set forth by the legislature on the use of property by public agencies or instrumentalities of the state, particularly when such controls involve a park or historic site. By opposing the Petition and involving the private parties in the suit, Scenic Hawai'i helped to set precedent that agencies may not easily subvert statutory limitations through indirect actions.

The number of people standing to benefit by the litigation is significant in terms of both the use of the park itself and the preservation of the park's historical significance. The underlying case addressed ATDC's efforts to remove a particular public park, but

the litigation also prevented ATDC from altering a historic site and acting in contravention of HRS § 206J–6(c) and Fagan's donative intent.

This case has general precedential value for enforcing governmental adherence to the dedication of private land for public parks and as historic sites, and for the enforcement of the government's commitments to the preservation of such parks and historic sites. *Cf. Kaleikini v. Yoshioka,* 129 Hawai'i 454, 466, 304 P.3d 252, 264 (2013) (holding that the third prong of the doctrine is met where, *inter alia,* the underlying litigation "ensured that historic preservation laws will be enforced as written."). These are the types of causes that have value to society as a whole, but which would not necessarily be vindicated by a single individual. *See Sierra Club II,* 120 Hawai'i at 219, 202 P.3d at 1264. Therefore, the third prong of the doctrine is satisfied in this case.

## VIII.

In conclusion, all three prongs of the private attorney general doctrine were satisfied. The ICA's January 18, 2013 judgment thus is reversed, and the court's Final Judgment entered on March 29, 2010 is affirmed.