**FOR PUBLICATION IN WEST'S HAWAI‘I REPORTS AND PACIFIC REPORTER**

Electronically Filed
Supreme Court
SCWC-22-0000402
15-MAY-2026
07:50 AM
Dkt. 25 OP

IN THE SUPREME COURT OF THE STATE OF HAWAI‘I

---o0o---

_____

TYLER RALSTON,
Petitioner/Appellant-Appellant,

vs.

BOARD OF LAND AND NATURAL RESOURCES
and RESORTRUST HAWAII, LLC,
Respondents/Appellees-Appellees.

_____

SCWC-22-0000402

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-22-0000402; CASE NO. 1CCV-21-0001528)

MAY 15, 2026

DEVENS, C.J., McKENNA, EDDINS, AND GINOZA, JJ., AND
CIRCUIT JUDGE CASTAGNETTI, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY McKENNA, J.

## I. Introduction

The narrow question before us concerns whether the private attorney general doctrine ("PAG doctrine") applies when a party challenging a one-year revocable permit is denied a contested case hearing and an appellate court determines due process

requires a contested case hearing, but remands the matter to the lower court to determine the scope of relief. We conclude the Intermediate Court of Appeals ("ICA") erred by ruling that the PAG doctrine does not apply because it has not yet been determined what relief, if any, could be obtained on remand. We therefore vacate the ICA's September 19, 2025 order denying Tyler Ralston's ("Ralston") attorney fees and remand this matter to the ICA to determine the reasonableness of Ralston's attorney fees and whether Resorttrust Hawaii, LLC ("RTH") is liable for them.

## II. Background

### A. Factual background

RTH owns and operates the Kahala Hotel. The underlying dispute arises from RTH's use of ceded lands fronting the hotel, known as Lot 41. The ICA recently outlined the history of Lot 41 in a related case:

> In 1963, four years after the crown and government lands were returned, the State entered into an agreement with the Kahala Hilton Hotel, Charles J. Pietsch, Jr., and David T. Pietsch (collectively, Kahala Hotel) to allow Kahala Hotel to "dredge a swimming area and construct a beach . . . for and on behalf of the State." The agreement provided that "[t]itle to and ownership of all filled and reclaimed lands and improvements seaward of the makai boundaries . . . shall remain in and vest in the State of [Hawaiʻi] and shall be used as a public beach." (Emphasis added.)
>
> This newly constructed beach and swimming area (Lot 41) is part of the returned crown and government lands.
>
> In 1968, shortly after completion of Lot 41, the Board granted a temporary month-to-month permit for one year to Kahala Hotel allowing it "to enter and occupy" 6,250 square feet of Lot 41 for "[r]ecreational purposes." The Board

2

> granted these temporary month-to-month yearly permits for the next 50 years.
>
> . . . .
>
> In August 2018, the new owner of Kahala Hotel, . . . Resorttrust Hawaii (or RTH), requested to amend its permit for Lot 41, which granted it use of 40,460 square feet. The request recounted some of the history of the Kahala Hotel's use of Lot 41, noting that the Board granted Kahala Hotel use of the entire parcel in 1986; the parcel served as a "buffer zone" between the sandy beach and hotel; and the parcel was used for "hukilaus," parties, weddings and other "important events," with public access along the side of the parking structure and by the shoreline.

Frankel v. Bd. of Land & Nat. Res., 155 Hawaiʻi 358, 361-62, 564 P.3d 1157, 1160-61 (App. 2025) (alterations in original, footnotes omitted), cert. denied, 2025 WL 1713026 (Haw. June 19, 2025).

In January 2019, the Board of Land and Natural Resources ("BLNR" or "Board") issued RTH revocable permit number S-7915 ("RP 7915"), which in relevant part required RTH to pay the State a monthly rent of $1,320.05 to utilize Lot 41 for "[r]ecreational and maintenance purposes limited to storage area, cabana hale, cabana tent, beach shower, tower caddy, hammock, trash can, beach chair storage, clam shell lounger, beach chair set up, and outrigger canoes storage." BLNR granted RTH one-year extensions of RP 7915 in 2020 and 2021. This matter concerns the 2022 renewal of RP 7915.

**B.    BLNR's 2022 renewal of RP 7915**

At a November 12, 2021 public meeting, the Board considered RTH's request to renew RP 7915 for the 2022 calendar year.

Ralston submitted testimony opposing the continuation of permit conditions that allowed RTH to pre-set lounge chairs, which he contended "generally sends a message that this land is for hotel guests and not for the public." Ralston also orally requested a contested case hearing. BLNR advised Ralston to submit his request for a contested case in writing within ten days.

Ralston therefore submitted a written petition for a contested case hearing on November 17, 2021. Ralston explained his specific property interest in Lot 41 that he contended entitled him due process protections:

> I began enjoying the RP parcel, the sandy beach, and the waters in front of the Kāhala Hotel and Resort (Kahala Hilton at that time) in the late 1960s. I have frequented the area for recreation and enjoyment my whole life and I am very familiar with the area. I started swimming and snorkeling out beyond the dredged lagoon over the reef and far out in front of the hotel in the channel through the reef, around 1980. Hundreds of times over the decades I've enjoyed recreation and relaxing on the sandy beach and the RP parcel after a swim with family and friends. When my son was born, and as he grew, our family spent countless hours swimming in the lagoon and out over the reef, and playing on the sandy beach and grassed over RP portion of the beach. More recently, in the last approximately six years, the area has changed for the worse. In particular, the grassed over beach portion (the State land RP parcel) has changed such that it's been more challenging to enjoy recreation, lounging, the natural views and beauty of the area. The negative changes have all been the result of the Hotel placing furniture and other items of their commercial activity on the RP parcel. Other than when I was away at college and at an internship, I would go to the beach in front of the Kāhala Hotel and Resort two to four times a week (until 2017). Since approximately 2017, I have gone there approximately twice a month, sometimes more frequently up to several times a week.
>
> My use and enjoyment of the revocable permit parcel and the surrounding area are adversely affected by the hotel's use of the revocable permit property (pre-setting beach chairs, storing equipment, and making commercial use of the land). I cannot use those areas where the hotel's chairs and

4

> equipment remain (I have no objection to the shower or garbage cans.)  The area is cluttered and unsightly.
>
> Please see the testimony I provided this year and in prior years.

BLNR considered Ralston's written petition for a contested case hearing at a January 14, 2022 public meeting.  It denied the petition after an executive session.

## C.  Appellate proceedings

### 1.  Underlying appeal

Ralston appealed to the Circuit Court of the First Circuit ("circuit court"), challenging the Board's denial of a contested case hearing and the renewal of RTH's permit without a contested case hearing.

On May 19, 2022, after hearing oral argument from counsel for Ralston, RTH, and BLNR, the circuit court affirmed the Board's denial of Ralston's request for a contested case hearing and issuance of RP 7915 for the 2022 calendar year.  In relevant part, the circuit court concluded:

> 10.  Even assuming [Ralston] has a property interest protected by due process, [Ralston] has been given a meaningful opportunity to be heard through the BLNR meetings on RP 7915.  The record demonstrates that [Ralston] has been given ample opportunity to share his views and concerns with BLNR, including providing written and oral testimony on RP 7915 and past RPs issued to RTH. [Ralston] has also submitted declarations and photographs in support of legal challenges to past RPs for the use of the State Parel.
>
> 11.  The Supreme Court recognized in Sandy Beach that "[d]ue process is not a fixed concept requiring a specific procedural course in every situation."  Sandy Beach [Def. Fund. v. City & Cnty. of Honolulu], 70 Haw. [361,] 378, 773 P.2d [250,] 261 (1989).

12. Balancing each of the factors in the three-part test enumerated from Sandy Beach, [Ralston] has been afforded sufficient due process.

13. First, RP 7915 involves non-exclusive use of the State Parcel which tends to limit or eliminate any impact of [Ralston]'s assertion of "recreational, aesthetic, environmental and public trust interests".

14. Second, the risk of an erroneous deprivation of [Ralston]'s claimed interest through the procedures actually used, and the probable value, if any, of additional or alternative procedural safeguards are low. [Ralston] has been given a meaningful opportunity to be heard through the BLNR meetings on RP 7915. Because no further process is required in this case, his right to due process was not violated.

15. Third, requiring a [contested case hearing] on [Ralston]'s complaints concerning his claimed exclusion from limited portions of the State Parcel under RP 7915 would create significant additional burdens upon the government, which are not warranted given both [Ralston]'s claimed interest and the procedural safeguards already afforded [to Ralston].

16. In sum, [Ralston] has not met his burden to show that BLNR abused its discretion in either denying his request for a [contested case hearing] or renewing RP 7915 for 2022.

Ralston timely appealed to the ICA, asserting in relevant part that the circuit court erred when it affirmed the BLNR's decisions to (1) deny his request for a contested case hearing in connection with the renewal of RP 7915, and (2) renew RP 7915 for the 2022 calendar year. He also argued the circuit court erred when it concluded that no contested case hearing was required.

The ICA majority agreed with Ralston. The majority concluded Ralston had a property interest in a clean and healthful environment protected under Article XI, Section 9 of the Hawaiʻi Constitution, as defined by Hawaiʻi Revised Statutes

6

("HRS") § 171-55 (2011),[1] in RTH's 2022 permit renewal. While Ralston was able to submit written and oral testimony, the ICA determined "other procedural protections afforded by a contested case hearing were lacking," such as Ralston's opportunity to submit evidence or cross-examine witnesses. Moreover, the majority reasoned, "it would not have been unduly burdensome to afford Ralston a contested case hearing" because BLNR was already required to consider whether RP 7915 would serve the best interests of the State as required under HRS § 171-55.

The ICA also stated, "this is <u>not</u> a case in which [Ralston] was previously afforded an opportunity to participate in a contested case hearing or trial regarding the issuance or renewal of RP 7915." (Emphasis in original.) Therefore, the ICA concluded, "Ralston was denied procedural due process and was entitled to participate in a contested case hearing on the renewal of RP 7915."

Because the ICA majority concluded a contested case hearing was required to protect Ralston's property interest, it did not

---

[1] HRS § 171-55 requires BLNR, in "issu[ing] permits for the temporary occupancy of state lands or an interest therein on a month-to-month basis," to impose "conditions and rent which will serve the best interest of the State[.]" The ICA held that as a law related to environmental quality, conditions required under HRS § 171-55 included those "that ensure a clean and healthful environment through 'control of pollution and <u>conservation, protection and enhancement of natural resources</u>." (Quoting Haw. Const. Art. XI, § 9 (emphasis in original).)

7

reach Ralston's other points of error.[2]  The ICA, however, said that Ralston's challenge to the 2022 permit renewal was likely moot because the 2022 permit had since expired.  Therefore, instead of vacating the expired permit and remanding to the BLNR to hold a contested case hearing, the ICA remanded the case to the circuit court "to determine what, if any, relief is available to Ralston in these circumstances."[3]

### 2.    Ralston's request for attorney fees and costs

After prevailing with the ICA majority, Ralston requested the ICA approve $24,581.37 in attorney fees and $660.38 in costs against RTH based on the PAG doctrine.  Ralston's counsel declared he spent a total of 56.7855 hours working on the appeal at $400.00 and later $450.00 per hour billable rates.

Although the scope of relief was not fully determined, Ralston argued he was the "successful party for the purpose of taxing costs and attorney's fees" when the ICA concluded he "was denied procedural due process and was entitled to participate in a contested case hearing on the renewal of RP 7915."  (Quoting

---

[2]    Ralston raised four other points of error — that the circuit court (1) applied an improper standard of review because BLNR did not adopt any findings of fact or conclusions of law; (2) erred "when it incorrectly identified the privately-owned parcel and suggested that Lot 41 is not intended to be used as a public beach"; (3) erred "when it suggested that RTH's uses are non-exclusive"; and (4) mischaracterized the bases upon which Ralston argued he was entitled to a contested case hearing.

[3]    The dissent agreed that Ralston had a property interest in a clean and healthful environment in Lot 41, but dissented from the majority's holding that a contested case hearing was required.

8

Kaleikini v. Yoshioka (Kaleikini II), 129 Hawai'i 454, 461, 304 P.3d 252, 259 (2013).)

Ralston contended his successful appeal to the ICA met the PAG three-prong test because (1) he vindicated important public policies, including the right to a contested case hearing, the constitutional right to a clean and healthful environment, and the requirements of HRS § 171-55; (2) private enforcement was essential because BLNR denied Ralston's request for a contested case hearing and actively opposed his appeal; and (3) the public benefitted from his appeal because the area fronting the Kahala Hotel is well used by the public and requiring a contested case hearing ensures the public can meaningfully participate in decision making on the use of public lands.

He also asserted that RTH was liable for attorney fees under the PAG doctrine.  Ralston contended RTH, as the beneficiary of RP 7915, played an active role in "vigorously opposing" his request for a contested case hearing and "aggressively defend[ing]" BLNR's denial of a contested case hearing at the circuit court and ICA.  These circumstances, Ralston contended, were analogous to those in Sierra Club v. Department of Transportation (Superferry II), 120 Hawai'i 181, 225, 202 P.3d 1226, 1270 (2009), and Kaleikini II, 129 Hawai'i at 472, 304 P.3d at 270, where this court awarded the plaintiffs attorney fees against the private defendant.

RTH opposed Ralston's attorney fees and costs motion, arguing Ralston could not meet the PAG three-prong test, and even if the PAG doctrine applied, it should not be liable for his fees.

It first refuted Ralston's contention that the case vindicated important public policy because, according to RTH, the ICA majority reached its conclusion "only considering 'the circumstances' of this particular case as it relates to whether [Ralston] was entitled to additional procedural rights." RTH further maintained that, on remand, Ralston would likely be unable to obtain any relief because the primary issue Ralston had with the 2022 permit renewal — the pre-setting of beach chairs and tables on the parcel — is no longer practiced by Kahala Hotel staff.

Second, RTH argued that private enforcement was unnecessary in this case because the BLNR did not "actively oppose[]" Ralston. RTH emphasized that BLNR did not outright bar Ralston's participation in the permit renewal process, but rather gave him ample opportunity to provide written and oral testimony at BLNR's public meetings. RTH further contended that just because the ICA majority determined Ralston should have been afforded the procedural protections provided in a contested case hearing, its ruling did not establish that BLNR had previously been actively opposing Ralston's case.

Third, RTH emphasized that just like the ICA held in <u>Darges</u> <u>v. County of Hawaiʻi Planning Department</u>, 134 Hawaiʻi 114, 334 P.3d 777, 2014 WL 2949403, at *18 (App. June 30, 2014) (mem. op.), "the decision in this case is fact specific and will not benefit substantial numbers of people." It contended Ralston's overbroad generalizations that Lot 41 is well used by the general public and the public benefits by meaningfully participating in decision-making on the use of public land "fail[ed] to even attempt to quantify the number of people standing to benefit from the decision." Instead, RTH pointed out that only Ralston and his counsel testified in opposition to the 2022 permit renewal.

RTH also rejected Ralston's position that RTH should be liable for his fees. It argued that even if the PAG doctrine applied to this case, <u>Kaleikini II</u> only stood for the proposition that Ralston's attorney fees award should be reduced based on the work Ralston can specifically attribute was related to RTH. (Citing 129 Hawaiʻi at 471-72, 304 P.3d at 269-70.) Here, based on the invoices submitted by Ralston's counsel, RTH argued it was unclear what time can be attributed to RTH and what can be attributed to the BLNR.

### 3. ICA order denying Ralston's attorney fees

The ICA granted Ralston's request for costs, but denied his request for attorney fees. The ICA explained:

11

2. The Summary Disposition Order entered on June 10, 2025, determined that Ralston was entitled to a contested case hearing on the 2022 renewal of RP 7915, and remanded the case to the Circuit Court of the First Circuit to determine what, if any, relief is available to Ralston in these circumstances, where the 2022 renewal of RP 7915 has expired.

3. In these circumstances, <u>where it has not yet been determined what relief Ralston can obtain, he has not shown that he has met all three prongs of the private attorney general doctrine – in particular, the number of people standing to benefit from this court's decision.</u>  See, e.g., <u>Asato v. Procurement Policy Bd.</u>, 132 Hawaiʻi 333, 357, 322 P.3d 228, 252 (2014).

4. Ralston is the prevailing party on appeal.

5. Costs in the amount of $660.38 are reasonable.

Therefore, IT IS HEREBY ORDERED that the Request is granted in part as to costs in the amount of $660.28 and denied in part as to Ralston's requested attorney's fees.

(Emphasis added.)

## 4. Certiorari proceedings

Ralston applied for a writ of certiorari challenging the denial of his attorney fees, which we granted.  He presents two related questions: "In the most general terms, did the ICA err when it denied Ralston's request for attorney fees pursuant to the private attorney general doctrine?  And more specifically: Does a plaintiff need to obtain relief to satisfy the private attorney general doctrine?"

RTH reiterates its position that Ralston fails to meet the three-prong PAG test, but does not otherwise opine on the ICA's conclusion that the PAG doctrine does not apply where relief is not fully determined.  BLNR did not respond to Ralston's certiorari application.

12

### III.  Standard of Review

>        This court reviews an ICA order granting or denying
> attorney's fees and costs under the abuse of discretion
> standard.  An abuse of discretion occurs where the court
> has clearly exceeded the bounds of reason or disregarded
> rules or principles of law or practice to the substantial
> detriment of a party litigant.

Cowan v. Exclusive Resorts PBL1, LLC, 156 Hawai'i 268, 272, 574

P.3d 288, 292 (2025) (citations and quotation marks omitted).

When a party seeks to recover fees under the PAG doctrine,

however, "we review de novo whether the [lower] court

disregarded rules or principles of law that arise in deciding

whether or not a party satisfies the three factors of the

private attorney general doctrine."  Asato v. Procurement Pol'y

Bd., 132 Hawai'i 333, 357, 322 P.3d 228, 252 (2014) (quoting

citation omitted).

### IV.  Discussion

For more than two decades, the private attorney general

doctrine has served as "an essential tool for promoting the

vindication of public rights" in Hawai'i courts.  Pub. Access

Trails Haw. v. Haleakala Ranch Co., 153 Hawai'i 1, 4, 526 P.3d

526, 529 (2023).  As an exception to the "American Rule" that

mandates "each party is responsible for paying [their] own

litigation expenses," the PAG doctrine:

>        allows courts in their discretion to award attorney's fees
> to plaintiffs who have vindicated important public rights.
> Courts applying this doctrine consider three basic factors:
> (1) the strength or societal importance of the public
> policy vindicated by the litigation, (2) the necessity for
> private enforcement and the magnitude of the resultant

13

> burden on the plaintiff, [and] (3) the number of people
> standing to benefit from the decision.

Superferry II, 120 Hawaiʻi at 218, 202 P.3d at 1263 (quoting

citation and brackets omitted).

> Because eligible plaintiffs may recover attorneys' fees,
> the PAG doctrine enables litigation in the public's
> interest by relieving otherwise prohibitive costs and
> burdens assumed by individuals and public interest groups.
> To date, the PAG doctrine has promoted litigation aimed at
> the preservation and conservation of Hawaiʻi's land and
> natural resources, as well as litigation vindicating the
> rights of the Native Hawaiian community.  The viability of
> the PAG doctrine hinges on plaintiffs being able to rely on
> the doctrine's promise that they will receive reasonable
> compensation for their efforts on behalf of the public.

Pub. Access Trails Haw., 153 Hawaiʻi at 4, 526 P.3d at 529.

In various instances, this court has concluded that

prevailing litigants failed to satisfy the three-prong PAG test.

See e.g., In re Water Use Permit Applications (Waiahole II), 96

Hawaiʻi 27, 32, 25 P.3d 802, 807 (2001) (plaintiffs challenged

the decision of a tribunal in an adversarial setting rather than

an established government policy or action); Goo v. Arakawa, 132

Hawaiʻi 304, 319, 321 P.3d 655, 670 (2014) (litigation did not

involve the enforcement of a law of general statewide

applicability).  We have also, however, cautioned against "an

overly-formalistic application of what it means to vindicate an

important public policy."  Honolulu Constr. & Draying Co. v.

Dep't of Land & Nat. Res. (Irwin Park II), 130 Hawaiʻi 306, 315,

310 P.3d 301, 310 (2013).  Where "[o]ur case law has long

reflected our concern about barriers facing community members

seeking meaningful participation in an agency's proceedings and determinations on matters affecting the environment," Ralston's successful appeal squarely falls within the scope of the PAG doctrine.  See Sierra Club v. Bd. of Land & Nat. Res., 156 Hawai'i 382, 386, 575 P.3d 472, 476 (2025).

Against this backdrop, we hold the PAG doctrine does not require the prevailing party to obtain relief beyond the ICA's holding here, that a contested case hearing was required.  Under the circumstances of this case, all three prongs are met.  Ralston is entitled to attorney fees under the PAG doctrine.

A.      **The PAG doctrine does not require the prevailing party to first obtain relief**

Ralston challenges the ICA's conclusion that because "it has not yet been determined what relief [he] can obtain," the three-prong PAG test is not satisfied.  We agree with Ralston.  Under the PAG doctrine, the prevailing party is not required to obtain relief beyond the ICA's holding here, that a contested case hearing was required, before collecting attorney fees.

This court has previously awarded attorney fees under the PAG doctrine where the scope of relief on remand was not yet determined.  For example, in Kaleikini, Native Hawaiian cultural practitioner Paulette Kaleikini sought to enjoin the City and County of Honolulu and the State from approving the Honolulu rail project until a comprehensive archaeological inventory

15

survey ("AIS") was completed.  Kaleikini v. Yoshioka (Kaleikini I), 128 Hawai'i 53, 56, 283 P.3d 60, 63 (2012).  We agreed with Kaleikini on four of the six counts at issue, and concluded the rules adopted under HRS Chapter 6E required a completed AIS for the entire project area before the City and State could approve the rail project.  Kaleikini I, 128 Hawai'i at 68, 283 P.3d at 75.  Instead of entering judgment in Kaleikini's favor, we noted:

> Although Kaleikini requests that we enter summary judgment in her favor, we note that Kaleikini sought a wide range of relief in the circuit court, and the rationale for granting or denying that relief has not been fully developed. Moreover, additional information may have become available since the City's motion [for summary judgment] was decided, and it is not clear what impact these additional facts may have on the relief Kaleikini seeks.

Kaleikini I, 128 Hawai'i at 81, 283 P.3d at 88.

When we later awarded Kaleikini attorney fees under the PAG doctrine, we again noted that the case was "remanded to the circuit court to determine the proper relief to be awarded." Kaleikini II, 129 Hawai'i at 462, 304 P.3d at 260.  Although relief was not yet determined, we expressly held that "the private attorney general doctrine does not require that a plaintiff receive a final judgment in [their] favor before fees may be awarded."  Id.

Last year in Unite Here!, we similarly awarded attorney fees pursuant to the PAG doctrine although the "determination of an appropriate remedy" by the circuit court was still pending.

16

Unite Here! Local 5 v. PACREP LLC (Unite Here! I), 157 Hawaiʻi 442, 458, 580 P.3d 622, 638 (2025); Unite Here! Local 5 v. PACREP LLC (Unite Here! II), 156 Hawaiʻi 338, 342-43, 574 P.3d 1286, 1290-91 (2025) (awarding Local 5's attorney fees under the PAG doctrine). There, the Local 5 labor union challenged the sufficiency of the final environmental assessments ("FEAs") for the now completed two tower Ritz-Carlton Residences in Waikīkī. Unite Here! I, 157 Hawaiʻi at 446, 580 P.3d at 626. We held in favor of Local 5. While we declined to invalidate the FEAs, we concluded relief in the form of proper environmental review can still be granted. Unite Here! I, 157 Hawaiʻi at 459, 580 P.3d at 639. We remanded the case to the circuit court to determine "an appropriate remedy" and to address whether the FEAs sufficiently addressed environmental effects of the project. Unite Here! I, 157 Hawaiʻi at 458, 465, 580 P.3d at 638, 645.

The ICA's determination that the PAG doctrine cannot apply because "it has not yet been determined what relief Ralston can obtain" is contrary to both Kaleikini and Unite Here!, and our holding that "the private attorney general doctrine does not require that a plaintiff receive a final judgment in [their] favor before fees may be awarded." Kaleikini II, 129 Hawaiʻi at 462, 304 P.3d at 260. Just as we remanded those matters to the circuit court to determine the relief available to the

17

prevailing party, the ICA remanded this case to the circuit court to determine the relief available to Ralston.

Instead of invalidating the now expired 2022 RP 7915, the ICA opted to remand the case to the circuit court "to determine what, if any, relief is available." Although the ICA noted Ralston's challenge "appears to be moot," it nonetheless concluded it fell under the "capable of repetition, yet evading review" and "public interest" exceptions to the mootness doctrine. In doing so, it held that "Ralston was denied procedural due process and was entitled to participate in a contested case hearing on the renewal of RP 7915." This holding, that a contested case hearing was required, constituted important and significant "relief."

Even if the circuit court later determines no further relief is available on remand with respect to the 2022 permit, Ralston's successful appeal to the ICA "promote[d] vindication of important public rights," including protecting the public's right to a clean and healthful environment through a contested case hearing. See Superferry II, 120 Hawaiʻi at 219, 202 P.3d at 1264 (quoting Arnold v. Dep't of Health Servs., 775 P.2d 521, 537 (Ariz. 1989)). To deny Ralston attorney fees because additional relief is not yet determined or may not be available — despite prevailing on the underlying merits of his appeal — is contrary to and undermines the purpose of the PAG doctrine.

18

**B.   Ralston meets the three-prong PAG test**

In its order denying Ralston's attorney fee request, the ICA concluded Ralston "has not shown that he has met all three prongs of the private attorney general doctrine," and appeared to suggest Ralston met the first two prongs, but failed to satisfy the third prong, "the number of people standing to benefit from [its] decision."  We respectfully disagree.  While Ralston's challenge to RTH's revocable permit to use a small parcel of public land fronting the Kahala Hotel may not affect all residents of the state, present and future, the underlying procedural due process principles animating his appeal fall within the PAG doctrine.

This court's recent opinion in Sierra Club v. BLNR, 156 Hawai'i 382, 575 P.3d 472 (2025), is instructive.  Just as the BLNR here denied Ralston's request for a contested case hearing on RTH's 2022 renewal of RP 7915, the BLNR there denied Sierra Club's request for a contested case hearing on Alexander & Baldwin's 2021 renewal of its revocable permit to divert water from East Maui streams.  See Sierra Club, 156 Hawai'i at 388, 575 P.3d at 478.  Similar to the ICA's conclusion in this case, we held in Sierra Club that a contested case hearing was required by Sierra Club's constitutionally protected right to a clean and healthful environment.  See 156 Hawai'i at 394-95, 575 P.3d at 484-85 ("If a party demonstrates a constitutionally protected

19

property interest affected by a government agency's decision, that party has a due process right to notice and an opportunity to be heard at a meaningful time and in a meaningful manner.").

With underlying legal issues analogous to the instant case — the due process right to a contested case hearing on an annual revocable permit renewal to use public trust resources — we concluded Sierra Club met all three prongs of the PAG doctrine:

> Sierra Club's appeal vindicated important public policies, including defense of a due process right to a contested case hearing before BLNR's renewal of A&B's "temporary" RPs to divert fresh water from East Maui streams. Private enforcement of these policies was essential, as no other party sought to test BLNR's reasoning behind setting a 45 mgd cap on water diversion and the change in the agency's definition of water waste. And Sierra Club's advocacy on their members' behalf could benefit the public generally, for example, in assessing potential water waste and vindicating procedural rights.

Sierra Club, 156 Hawai'i at 401, 575 P.3d at 491.

Similarly, here, (1) Ralston's appeal to the ICA vindicated the due process right to a contested case hearing before BLNR's renewal of a revocable permit to occupy public lands; (2) private enforcement was necessary as Ralston was the sole party to challenge the BLNR's denial of a contested case hearing and renewal of RP 7915; and (3) Ralston's advocacy benefits the public in vindicating procedural rights under HRS § 171-55, a law of general applicability that governs the issuance of "permits for the temporary occupancy of state lands."

1.    **Ralston vindicated the public's due process rights in renewals of revocable permits for use of public lands**

Ralston's appeal easily meets the first prong of the PAG doctrine, the strength or societal importance of the public policy vindicated by the litigation. See Sierra Club, 156 Hawai'i at 401, 575 P.3d at 491 (noting "Sierra Club's appeal vindicated important public policies, including defense of a due process right to a contested case hearing"). His successful appeal to the ICA vindicated the public's due process right to meaningfully participate in revocable permit renewals to utilize public lands, which are considered at public BLNR meetings with no opportunity to introduce evidence or cross-examine witnesses. It also reinforced the public's right to a clean and healthful environment, including the "conservation, protection and enhancement of natural resources." Haw. Const. Art. XI, § 9.

RTH contends Ralston fails to meet the first prong because the ICA's summary disposition order was "not as groundbreaking as [Ralston] leads on" and carries little precedential value. This argument lacks merit.

In an opinion awarding attorney fees to a third-party intervenor in a challenged development to Irwin Park in Downtown Honolulu, we emphasized, "[s]imply because this case relates to a discrete piece of property does not mean that [the intervenor] has not advocated an important public policy." Irwin Park II,

21

130 Hawai'i at 314, 310 P.3d at 309. There, the underlying court ruling upheld a deed provision, which ensured the future use of Irwin Park as a public park and historic site. Id. In preserving the parcel's status as a public park and historic site, we held those interests were of significant public concern even if the case only related to a "discrete piece of property." Id.

In that same vein, while the ICA's unpublished summary disposition order in the instant case only pertains to a "discrete piece of property," Ralston's efforts to ensure the public can meaningfully participate in revocable permit renewals before the BLNR advance the enforcement of the public's right to a clean and healthful environment and the procedural due process afforded under that right.

### 2. Private enforcement was necessary because BLNR denied Ralston's contested case hearing request

Ralston also meets the second prong of the PAG doctrine, "the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff." See Waiahole II, 96 Hawai'i at 31-32, 25 P.3d at 806-07. This prong focuses on "the role played by the government," and considers whether the prevailing party "served as the sole representative of the vindicated public interest" and whether "[t]he government either completely

abandoned, or actively opposed, the [prevailing party]'s cause." Waiahole II, 96 Hawaiʻi at 31, 25 P.3d at 806.

Ralston's appeal challenged the BLNR's denial of his request for a contested case hearing and approval of RP 7915 for the 2022 calendar year — two decisions BLNR actively defended on appeal. RTH contends that BLNR did not "actively oppose[]" Ralston because it gave him "ample opportunity" to provide written and oral testimony at its public meetings. This argument, however, ignores BLNR's defense of its decisions on appeal and the ICA's holding that "other procedural protections afforded by a contested case hearing were lacking" in this case. Private enforcement was necessary as no other party sought to challenge BLNR's decision to renew RP 7915 without a contested case hearing.

### 3. Ralston's appeal benefits all who seek meaningful participation in an agency's proceedings

Finally, we conclude Ralston meets the third prong of the PAG doctrine, which considers the number of people standing to benefit from the decision. See Asato, 132 Hawaiʻi at 357, 322 P.3d at 252. This conclusion is consistent with our previous opinions which held the third prong was satisfied where prevailing parties "vindicated causes that included procedural rights related to environmental review, Native Hawaiian cultural rights, and historic preservation." Id. (citations omitted).

It is also consistent with our emphasis that "the types of causes which the [PAG] doctrine is applicable, 'do not involve the fortunes of a single individual to the extent necessary to encourage their private vindication in the courts.'" Id. (quoting Irwin Park II, 130 Hawai'i at 315, 310 P.3d at 310 (citations and emphasis omitted)).

Here, the ICA's decision concerned the procedural due process rights of members of the public under HRS § 171-55, a law of general statewide applicability that governs the issuance of "permits for the temporary occupancy of state lands." Specific to Lot 41, the ICA vindicated the procedural due process rights of members of the public such as Ralston who recreationally enjoy Kāhala Beach. Beyond Lot 41, Ralston's appeal underscores the "barriers facing community members seeking meaningful participation in an agency's proceedings and determinations on matters affecting the environment," and the importance of the ICA's decision in chipping away at those barriers. See Sierra Club, 156 Hawai'i at 386, 575 P.3d at 476.

In suggesting Ralston failed to meet the third prong, the ICA cites Asato, which concerned a bidder's challenge to regulations under the State Procurement Code. 132 Hawai'i at 336-37, 322 P.3d at 231-32. This court agreed with the bidder's claims, and invalidated the challenged regulations, which we held exceeded the Procurement Policy Board's authority granted

24

by the legislature.  Asato, 132 Hawai'i at 346, 322 P.3d at 241.

Although the bidder prevailed on appeal, we explained the court's holding would only apply to "future cases where there are fewer than three qualified bidders for professional services contracts," and interested parties would be financially incentivized to bring a future lawsuit.  Asato, 132 Hawai'i at 357-58, 332 P.3d at 252-53.  Therefore, we concluded the third prong was not satisfied.

Asato, however, is inapt to Ralston's appeal.  The context of procurement — where bidders for professional services have a financial incentive to bring suit — differs significantly from the context surrounding Ralston's appeal, where a member of the public seeks to hold BLNR accountable to its public trust obligations under the Hawai'i Constitution.  Indeed, Ralston's appeal is exactly the situation where we noted the third prong of the PAG doctrine has been satisfied — "plaintiffs have vindicated causes that included procedural rights related to environmental review."  Asato, 132 Hawai'i at 357, 332 P.3d at 252.

RTH contends the third prong cannot be satisfied here because the ICA's decision was "fact specific and will not benefit substantial numbers of people."  They note that only Ralston and his counsel testified in opposition to the 2022 permit renewal.  In countering RTH's position, Ralston points

out that many members of the public enjoy Kāhala Beach, particularly Lot 41, and others have voiced their opposition to RP 7915 in previous years and at neighborhood board meetings.

Regardless of how well used Lot 41 is, the result of Ralston's appeal enforced the public's due process rights in renewals of permits to temporarily occupy public lands — a cause "that ha[s] value to society as a whole, but . . . would not necessarily be vindicated by a single individual." See Irwin Park II, 130 Hawai'i at 319, 310 P.3d at 314. Just as we concluded that "litigation [which] concerned a specific property, but the result vindicated the dedication of public parks and historic sites across the state" satisfied the third prong in Irwin Park II, the third prong is similarly satisfied here, as the result of Ralston's appeal vindicated the due process right to meaningfully participate in BLNR's decision-making on the renewal of revocable permits to use public lands. See 130 Hawai'i at 318, 310 P.3d at 313.

### V. Conclusion

Accordingly, we vacate the ICA's September 19, 2025 Order Re: Request for Attorney's Fees and Costs and October 6, 2025 Judgment on Appeal to the extent it is inconsistent with our opinion. We remand this matter to the ICA to determine the

reasonableness of Ralston's attorney fees and whether RTH is

liable for them.

| | |
|---|---|
| David Kimo Frankel<br>for petitioner<br>Tyler Ralston | /s/ Vladimir P. Devens |
| | /s/ Sabrina S. McKenna |
| Sianha M. Gualano<br>for respondent | /s/ Todd W. Eddins |
| Board of Land and<br>Natural Resources | /s/ Lisa M. Ginoza |
| | /s/ Jeannette H. Castagnetti |
| William M. Harstad,<br>Puananionaona P. Thoene, and<br>Derek B. Simon<br>for respondent<br>Resorttrust Hawaii, LLC | |

